JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Glen T. Evans, Sr. appeals from his conviction and sentence for aggravated murder, kidnapping, and felonious assault with firearm specifications. For the reasons that follow, we affirm.
 {¶ 2} On April 13, 2004, police found Douglas Shoup, the victim, dead in a house at 6305 Denison Avenue. He had been shot in the head. The house served as a location for individuals to engage in drug activity and prostitution. Shoup, along with the other two victims, George "Rocky" Smith and Joseph "Donut" Dixon, lived in the house. Trial testimony established that numerous other drug users and convicted felons frequented the house, including defendant and a man named Angel Goray.
 {¶ 3} On or around April 12, 2004, Goray beat and robbed an unidentified man in the house. He allegedly stole a ring, a watch, and some money. A dispute arose between defendant and Goray over the stolen items. Goray and defendant allegedly exchanged threats, including that the two may settle the matter with guns.
 {¶ 4} Later that day, defendant loaned his car to Robert Peer. A group of men, including Peer and defendant, confronted Goray at a Kmart store. Someone sucker-punched Goray and the men dispersed without resolving the dispute. All the men abused crack cocaine and testimony indicates they were high most of the time, including April 12, 2004.
 {¶ 5} Back at 6305 Denison, defendant continued his substance abuse and became "disturbed" according to eyewitness accounts. He accused people of "being against him" and of betraying him. Dixon suffered a beating and was ordered to stay in a bedroom as "punishment" until defendant allowed him to leave. At some point, defendant acquired a shotgun, which he pointed in the face of a man called "Smoke." Smith escorted Smoke out of the house. Shortly thereafter, defendant turned on Smith, Dixon, and Shoup.
 {¶ 6} Defendant felt someone was hiding in the house and ordered the men, at gunpoint, to search the house. Defendant told the three that if someone was in the house he would shoot them all. Defendant further stated that he had previously fantasized about killing them. Eventually, defendant lined up the men in the hallway and ordered them to put their heads together so he could kill them. Defendant also told the men that they were going to die that night. Defendant began talking in rhymes and crying. A shot was fired and Smith and Dixon ran out of the house. Smith called 911 and reported shots being fired at 6305 Denison. Smith and Dixon met each other on the street, where Dixon informed Smith that Shoup was dead. The two men spent the night hiding in an abandoned house.
 {¶ 7} Phone calls were exchanged among Smith, Dixon, Peer, Goray, and defendant's family members. Peer, still driving defendant's vehicle, picked up Goray and Goray's girlfriend. Goray, Peer, and Smith each returned to 6305 Denison on April 13, 2004. Smith stated that he "secured" the house at Goray's instruction to prohibit the discovery of Shoup's body. Peer returned to pick up his clothes, fearing police would connect him to the murder. Goray admitted that he took the shotgun from the house. Goray proceeded to defendant's house, where he picked up two more guns and then delivered all of the firearms to Max Robertson. Robertson wiped the shotgun with an oily rag.
 {¶ 8} A vice detective informed police at the scene that they had an encounter with Peer at the residence the night before. Acting on this lead, police proceeded to Peer's parents' home. Peer ultimately agreed to cooperate with police, which resulted in the apprehension of Smith, Dixon, Goray, and Joy Neville. Each made statements to police identifying defendant as the shooter. Goray assisted police in recovering the shotgun used to kill Shoup.
 {¶ 9} Smith and Dixon later recanted their statements. At trial, Dixon claimed he could not remember anything about that night or the murder or any of his earlier statements. Smith, on the other hand, recalled the incident and claimed he recanted only under duress.
 {¶ 10} Witnesses from the coroner's office testified about the autopsy. The autopsy photographs were admitted into evidence without objection. Shoup sustained a fatal gunshot wound to his right eye. It was estimated that the shot was fired from a distance of one to three feet.
 {¶ 11} The jury found defendant guilty as charged and the court imposed sentence as follows: 20 years to life for aggravated murder with a consecutive three-year sentence for the firearm specification; three years for each count of kidnapping to run concurrent; four years for each count of felonious assault with one to run concurrent to the other sentences and one to run consecutive to the other counts. The judge explained her rationale for imposing a consecutive sentence for the felonious assault on Smith based on the record evidence and Smith's testimony in particular.
 {¶ 12} Defendant's assignments of error shall be addressed in the order presented for our review.
 {¶ 13} "I. The verdict of the jury finding defendant-appellant guilty of aggravated murder, kidnapping, and felonious assault is against the manifest weight of the evidence.[1]
 {¶ 14} To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 16} Defendant believes the evidence is lacking on the necessary element of aggravated murder that defendant acted with prior calculation and design. We do not agree. The evidence includes testimony that defendant "marched" the victims around the house at gunpoint in a paranoid frenzy looking for someone. Defendant not only threatened to kill the victims but revealed how he had previously fantasized about doing so. Defendant lined up the victims in the hallway, told them to stand together, and informed them they would die that night. Smith pleaded for his life, believing he would be killed. Defendant kept the gun pointed at the victims at all times and kept them close together "to make sure that [they] all were in range." (Tr. 936). As defendant's anger increased, a shot was fired that killed Shoup. The other two victims escaped and hid the rest of the night in a vacant house in fear for their lives.
 {¶ 17} The time frame sufficient for finding prior calculation and design has been addressed in Ohio law. "`Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves,' but `momentary deliberation' is insufficient." State v. Taylor
(1997), 78 Ohio St.3d 15, 22, quoting Committee Comment to Am.Sub.H.B. No. 511, R.C. 2903.01. The Ohio Supreme Court has repeatedly recognized that some short-lived emotional situations can serve as the basis for finding the prior calculation and design element of aggravated murder. Id. (where defendant brought gun to the scene and had strained relationship with the victim, two to three minutes [from time of argument to killing] is more than instantaneous or momentary * * * and is more than sufficient for prior calculation and design) following State v. Claytor
(1991), 61 Ohio St.3d 234, 574; State v. Robbins (1979),58 Ohio St.2d 74; State v. Toth (1977), 52 Ohio St.2d 206.
 {¶ 18} There was sufficient evidence of prior calculation and design to submit the aggravated murder charge to the jury and the jury did not clearly lose its way in concluding that the State established the essential elements of aggravated murder beyond a reasonable doubt.
 {¶ 19} Assignment of Error I is overruled.
 {¶ 20} "II. The trial court erred in admitting the State's exhibits into evidence because they were prejudicial and cumalative [sic]."
 {¶ 21} Defendant argues that the trial court abused its discretion by admitting as exhibits the autopsy protocol, various x-rays, autopsy photographs of Shoup, and a portion of the plastic shotgun "wad" removed from Shoup's brain during the autopsy. (Ex. 4, 2-6). Defendant argues that the evidence should have been excluded as cumulative, unnecessary, and/or because their alleged unfair prejudicial effect outweighed their probative value. Alternatively, defendant argues that the admission of the evidence was plain error.
 {¶ 22} Defendant failed to object to any of the subject exhibits and has accordingly waived all but plain error. Statev. Monroe, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 25, citingState v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus. "To constitute plain error it must appear that `but for the error, the outcome of the trial clearly would have been otherwise.'" State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 82, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
 {¶ 23} The autopsy protocol was properly admitted because it was a self-authenticating public record. See Evid.R. 902(1). Pursuant to R.C. 313.10, records of the coroner are public record and are admissible into evidence. Moreover, this Court has previously held that the autopsy protocol is admissible and relevant and non-prejudicial evidence. State v. Wilson (Mar. 20, 1997), Cuyahoga App. No. 69346.
 {¶ 24} The x-rays and photographs of the victim taken during the autopsy were also properly admitted. Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. See State v. Wilson (1972),30 Ohio St.2d 199. A trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if, on balance, the prejudice outweighs the relevant probative value. However, the mere fact that a photograph is gruesome or horrendous is not sufficient to render it inadmissible, per se. State v. Woodards
(1966), 6 Ohio St.2d 14, 25.
 {¶ 25} "The state must prove, and the jury must find, that the killing was purposely done. The number of shots fired, the places where the bullets entered the body, and the resulting wounds are all probative evidence of a purpose to cause death. The total probative value of these photographs was not outweighed by the danger of prejudicial effect upon the defendant." Statev. Strodes (1976), 48 Ohio St.2d 113, 116, vacated in part on other grounds (1978), 438 U.S. 911.
 {¶ 26} In the instant case, the photographs and x-rays corroborated the coroner's testimony showing the places where the bullet entered the body and the resulting wounds. Pursuant to the holding in Strode, the pictures were admissible and not prejudicial.
 {¶ 27} Finally, the plastic shotgun "wad" was properly admitted because it corroborated the coroner's testimony regarding her opinion on the approximate range that the gun was to the victim upon discharge.
 {¶ 28} Furthermore, it does not appear that the outcome of the trial "clearly would have been otherwise" if the subject exhibits had been excluded. The admission of the exhibits was not plain error.
 {¶ 29} Assignment of Error II is overruled.
 {¶ 30} "III. The trial court erred in sentencing defendant-appellant to consecutive terms of imprisonment when it did not follow the stautory [sic] requirements for the imposition of such a sentence."
 {¶ 31} Defendant claims the trial court failed to make the findings necessary to support its imposition of a consecutive sentence for the felonious assault on Smith. We do not agree.
 {¶ 32} R.C. 2929.14(E)(4) provides as follows:
 {¶ 33} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 34} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 35} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 36} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 37} Specifically, defendant argues that the trial court failed to make the finding that consecutive sentences were not disproportionate to the danger posed to the public by the offender's conduct.
 {¶ 38} Our review of the transcript reveals the trial court's thoughtful consideration in imposing sentence in this case. Where possible, the trial court imposed concurrent sentences on all counts except one; which involved the felonious assault on Smith. Defendant concedes that the judge found a consecutive term was necessary in order to protect the public and to punish defendant and that the sentences were not disproportionate to sentences that are normally imposed for an offense like this given the offender's history of criminal convictions. The court felt the consecutive term was necessary to protect the public from future crimes and to punish the offender. The judge continued to elaborate on why she felt a consecutive term was necessary with regard to the felonious assault committed against Smith as distinguished from the concurrent term she imposed for the felonious assault committed against Dixon. Unlike Dixon, who could recall nothing, Smith had articulated his fear and the physical harm defendant's conduct caused him under the circumstances. The court found the terms imposed were "necessary in order to protect the public and punish [defendant] for the crimes that were committed."
 {¶ 39} With respect to proportionality of the sentences imposed, the judge observed the following: "I spent a long time this morning trying to put the pieces of this trial together for purposes of the Court's sentencing.
 {¶ 40} "* * *
 {¶ 41} "Mr. Evans, I'm not going to give you a lecture, I'm not going to tell you what you did was wrong * * * I do have to say to you, sir, that it has had an effect on a lot of people that will never change.
 {¶ 42} "* * *
 {¶ 43} "Mr. Smith did indicate * * * that he felt that his life was ending that evening, and for all intents and purposes it could have ended that evening.
 {¶ 44} "* * *
 {¶ 45} "As far as the second victim * * * is concerned, Joseph Dixon, * * * I have no idea what type of harm was caused Mr. Dixon at this point. What he did indicate was that he was just a cocaine addict, and that's the way he lives. So as far as fear or any type of emotional harm that was caused to Mr. Dixon, I don't think we know. We do know what was caused to Rocky George Smith. Rocky made it very clear he thought he was going to die that evening.
 {¶ 46} "* * *
 {¶ 47} "Mr. Evans, I could pile up the years as far as I wanted to and I don't think it would make one bit of difference one way or the other." (Tr. 1160-1166).
 {¶ 48} It is not necessary for the trial court to use the exact language of R.C. 2929.14, as long as it is clear from the record that the trial court made the required findings. SeeState v. Williams, Cuyahoga App. No. 79273, 2002-Ohio-503. It is clear from the record that the trial court found a consecutive sentence for the felonious assault defendant committed against Smith was not disproportionate to the danger defendant poses to the public. The findings and reasons are supported by clear and convincing evidence in the record.
 {¶ 49} Assignment of Error III is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Conway Cooney, J., and Anthony O. Calabrese, Jr., J., concur.
[1] Although the assignment of error challenges defendant's conviction as against the weight of the evidence, defendant's argument challenges the sufficiency of the evidence. We therefore will review his conviction under both standards.