JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Kevin Nance ("defendant"), appeals from his conviction and sentence after being found guilty of aggravated murder with specifications and having a weapon while under disability. For the reasons that follow, we affirm.
 {¶ 2} On June 1, 2006, defendant was living in the upstairs unit of a duplex on Colgate Avenue in Cleveland, Ohio. Defendant lived with his girlfriend Bertha Curry (aka "BJ") and her children. The downstairs unit was occupied by Karl Seals, his girlfriend, and their children.
 {¶ 3} That evening, the victim, Lambert Collins (aka "Peanut") was on the Colgate property helping his friend Karl Seals unload tools from Kirk Seals' truck. Kirk arrived with his girlfriend Trena to pick up the truck. Karl and Collins were drinking beer as they unloaded the truck. Collins was in the front yard talking to Kirk when defendant returned home. Defendant told Collins there was no drinking in the front yard.
 {¶ 4} The two men exchanged words and defendant went into his upstairs unit. Bertha testified that defendant was upset with Collins for drinking on the porch.
 {¶ 5} Collins continued to stay in the front yard with his beer. Everyone heard defendant yell very loudly out the window at Collins to stop drinking. Collins became more agitated and upset and went into the front door of the duplex to confront defendant. *Page 4 
 {¶ 6} Trena said she heard Collins say he did not want any trouble. The Seals brothers told Collins not to go inside and Karl tried to physically stop Collins. Bertha went downstairs to try to resolve the situation. She said she passed defendant on the stairs.
 {¶ 7} Collins opened the door, which several witnesses said was unlocked. Defendant claims the door was locked. Some witnesses say Collins easily opened the door, while others testified that he smashed it open violently. Bertha said she pushed Collins and he pushed her back. She complained about him pushing her and went back upstairs into her unit. In her opinion, Collins was intoxicated.
 {¶ 8} Bertha said she was not afraid or scared at any time. On her way upstairs, Bertha passed defendant, who was going down the stairs. She saw something shiny and silver in defendant's back pocket and heard him say to Collins "I've got something for you." Defendant denied saying that. Bertha testified that defendant also said, "Don't push my girl like that." Collins remained on the landing inside the front door.
 {¶ 9} Defendant testified that he asked Collins to stop drinking in front of the house because the kids play there and because he felt the police would cite him for an open container. He had seen Collins at the house once before with Karl Seals. According to defendant, Collins got excited and talked to him in a loud voice. Collins told defendant he "wasn't bothering nobody and he can drink wherever he pleased." Defendant was a little upset and then he heard Collins say "F ___ that hoe a * * * n ___ *Page 5 
. I can drink what I want to drink." Defendant responded by yelling, "all I asked was that you not drink out front because I stay here." Defendant was upstairs on the landing of the stairs. Then, Collins approached the porch. Bertha went downstairs and defendant went to his bedroom and grabbed his loaded gun, "just in case" there was a confrontation. Defendant heard Bertha say "take your hands off me."
 {¶ 10} Defendant admitted that he could have avoided the situation by turning around and going back to his apartment. He confirmed that he could have picked up the telephone and called 911. Instead, he chose to take his loaded gun down the stairs to where Collins was standing. He saw Collins inside on the landing by the stairs and he was making threatening remarks to defendant. Defendant reached for his gun. Collins was trying to come up the stairway.
 {¶ 11} The Seals brothers and Trena could not see inside the house but could hear voices arguing. Karl heard defendant say "Oh, you kill niggers, hum," to which Collins said, "yeah." Defendant also testified that this exchange occurred. Defendant claims that Collins lunged at him with his right hand, causing defendant to fire the gun one time. However, he removed the safety on the gun before firing it. Defendant said Collins' statement about killing people made him scared and in fear for his safety. Defendant confirms that he did not include this fact in his statement to police. Defendant ran upstairs and out the back door of his unit in a panic. He felt the police would never believe his story. *Page 6 
 {¶ 12} The witnesses heard a shot fired. Collins pushed through the screen on the door, walked outside bleeding, and fell in the front of the house.
 {¶ 13} Bertha went back downstairs and saw defendant with a gun. When she returned to her unit, she could not find defendant but noticed the back door was opened. The witnesses were taken to the police station where they all made statements. Police searched defendant's residence and found bullets inside.
 {¶ 14} Police and paramedics arrived on the scene within three to four minutes but Collins was already dead. The Coroner's report listed the cause of death as a "gunshot wound of chest * * *." The deputy coroner testified that the autopsy showed that the victim was "acutely intoxicated" with a .25 blood alcohol level. Specifically, she stated that the victim's blood alcohol level was "at very impaired balance. He would have trouble coordinating movements. * * *."
 {¶ 15} Defendant turned himself in a few days later. When police interviewed him, defendant told them where to find the gun. Police then recovered the firearm from under the doghouse in the backyard, which was entered into evidence as State's Exhibit 61. Testing determined that the weapon was operable. It was concluded within a reasonable degree of scientific certainty that a spent shell casing from the crime scene was fired from State's Exhibit 61. The majority of the ammunition recovered from defendant's residence matched the make and manufacturer of the ammunition found in the gun. *Page 7 
 {¶ 16} Defendant admitted he had prior convictions for burglary and domestic violence. Although he had purchased a gun, defendant knew that it was against the law for him to do so.
 {¶ 17} Defendant also testified that the lease agreement required the downstairs tenants to use the side door and the upstairs tenants to use the front door. Defendant testified that the downstairs adult tenants did not use the front door. Contrarily, Bertha and Karl testified that the downstairs tenants did use the front door. The State also introduced photographs, which depicted the downstairs tenants' school bags and shoes by the front door. There is access to the downstairs unit from the front door.
 {¶ 18} The trial court instructed the jury on self defense and included a duty to retreat over defendant's objection. The jury found defendant guilty of aggravated murder with a firearm specification[1]
and the court found him guilty of having a weapon while under disability.
 {¶ 19} The court sentenced defendant to life in prison without parole eligibility for 30 years on Count 1, to run consecutively to a three-year prison term for the firearm specification but concurrently to a four-year prison term on Count 2. The court advised defendant of the five-year term of post-release control that will follow his prison term. *Page 8 
 {¶ 20} We will address defendant's assignments of error together where it is appropriate for discussion.
 {¶ 21} "I. As the State failed to introduce sufficient evidence on the element of `prior calculation and design,' appellant's aggravated murder conviction must be reversed as a matter of law.
 {¶ 22} "II. The jury's finding of `prior calculation and design' was unsupported by the manifest weight of the evidence."
 {¶ 23} To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. *Page 9 
 {¶ 25} Defendant believes the evidence is lacking on the necessary element of aggravated murder that defendant acted with prior calculation and design.
 {¶ 26} The time frame sufficient for finding prior calculation and design has been addressed in Ohio law. "`Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves,' but `momentary deliberation' is insufficient." State v. Taylor (1997), 78 Ohio St.3d 15, 22,1997-Ohio-243, quoting Committee Comment to Am. Sub. H.B. No. 511; R.C.2903.01. The Ohio Supreme Court has repeatedly recognized that some short-lived emotional situations can serve as the basis for finding the prior calculation and design element of aggravated murder. Id. (where defendant brought gun to the scene and had strained relationship with the victim, two to three minutes [from time of argument to killing] is more than instantaneous or momentary * * * and is more than sufficient for prior calculation and design), following State v. Claytor (1991),61 Ohio St. 3d 234; State v. Robbins (1979), 58 Ohio St.2d 74; State v.Toth (1977), 52 Ohio St.2d 206.[2]
 {¶ 27} In this case, defendant testified that he had words with Collins about him drinking beer in the front yard. Defendant entered his upstairs unit already angry and then heard Collins make derogatory remarks about him. This caused defendant to scream at Collins through the window. The situation continued to escalate as an overtly intoxicated Collins approached the duplex. While Bertha went *Page 10 
to talk to Collins in an effort to resolve the matter, defendant decided to go into his room and get a loaded gun. Collins was unarmed and no one believed him to have any type of weapon. After exchanging words with Collins, Bertha returned to her residence. At no time was Bertha afraid or scared of Collins.
 {¶ 28} Defendant conceded he could have returned to his residence and closed the door; he could have called the police, but instead he went down the steps to confront Collins with a loaded gun. Bertha said that defendant told Collins "I got something for you." Defendant removed the safety and pointed the loaded gun at Collins. Collins made the comments set forth previously and allegedly lunged with his right hand toward defendant, who proceeded to shoot and kill Collins.
 {¶ 29} Further, the jury was charged on murder, a lesser included offense of aggravated murder, which does not include the element of prior calculation and design. The jury, however, found that the evidence supported that element in this case.
 {¶ 30} There was sufficient evidence of prior calculation and design to submit the aggravated murder charge to the jury and the jury did not clearly lose its way in concluding that the State established the essential elements of aggravated murder beyond a reasonable doubt.
 {¶ 31} Assignments of Error I and II are overruled. *Page 11 
 {¶ 32} "III. As the trial court failed to consider the seriousness factors required by R.C. 2929.12, appellant's sentence must be vacated as contrary to law.
 {¶ 33} "IV. As appellant's sentence was based on considerations prohibited by R.C. 2929.11(C), his sentence must be vacated as contrary to law and offensive to equal protection principles."
 {¶ 34} Defendant first challenges his sentence as being contrary to law because, he believes, the trial court did not consider the sentencing factors set forth in R.C. 2929.12.
 {¶ 35} "There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. State v.Polick (1995), 101 Ohio App.3d 428, 431; State v. Gant, Mahoning App. No. 04 MA 252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings), citing State v. Cyrus (1992), 63 Ohio St.3d 164,166, 586 N.E.2d 94; State v. Hughes, Wood App. No. WD-05-024,2005-Ohio-6405 (trial court was not required to address each R.C.2929.12 factor individually and make a finding as to whether it was applicable in this case)." State v. Harrison, Cuyahoga App. No. 88957,2007-Ohio-3524, T|28; see, also, State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855.
 {¶ 36} It is well settled that the weight to be given any R.C. 2929.12
factor is within its discretion. State v. Kincaid (Nov. 8, 2001), Cuyahoga App. No. 79526, *Page 12 
citing State v. Parker (Jan. 19, 1999), Clermont App. No. CA98-04-025;State v. Kalman (Nov. 15, 1998), Ashland App. No. 00-CA-1348; State v.Willis (Aug. 9, 1999), Clermont App. No. CA99-01-007.
 {¶ 37} While the defendant would interpret the facts to favor application of many of the mitigating factors contained in R.C.2929.12, it is relatively clear from the record that the trial court, in its discretion, did not. The judge explained that the victim's murder was "absolutely senseless" and that "to kill somebody over a beer is really the most ludicrous thing" that she had heard in nearly 30 years of experience. The judge told the defendant "I really can't believe that you did what you did for the reasons you did it [meaning, over the victim drinking a beer in the front yard."] Clearly, the trial court did not believe that the victim instigated the offense and did not believe defendant's contention that he acted in self-defense. The court expressed its belief that the victim was killed for "stupid reasons."
 {¶ 38} Defendant also maintains the trial court based his sentence on his race contrary to R.C. 2929.11(C) and in violation of equal protection principles. Defendant believes that the court "focused on the issue of black-on-black crime" and takes exception with the trial court's discussion of Dr. Martin Luther King's legacy during his sentencing hearing. There is no indication that the trial court's comments in this regard impacted the sentence that was imposed. Quite to the contrary, the trial court was specifically echoing the comments that were made prior to sentencing by many of the members of the murder victim's family. The court at no time *Page 13 
indicated that it was imposing a harsher sentence upon the defendant due to his race nor can that fairly be inferred from the record when it is read in context.
 {¶ 39} We can only reverse or modify a sentence if it is not clearly and convincingly supported by the record and/or is contrary to the law. In this instance, there is no indication that the trial court failed to consider the relevant statutory factors during sentencing or that it imposed a harsher sentence due to race. The sentence is not clearly and convincingly unsupported by the record or otherwise contrary to the law.
 {¶ 40} Assignments of Error III and IV are overruled.
 {¶ 41} "V. In refusing to instruct the jury that appellant had no duty to retreat from his home, the trial court committed reversible error."
 {¶ 42} Defendant maintains that the trial court erred by refusing to include in the self-defense instruction the fact that there is no duty to retreat from one's home in accordance with State v. Williford (1999),49 Ohio St.3d 247, paragraph two of the syllabus. The State argued against this component of the self-defense instruction on the basis that the murder occurred in the common area of the duplex. The State relies on appeal, as it did below, on case law which holds that there is a duty to retreat for purposes of determining the viability of self-defense when an individual is in the common area of a multiple family structure.State v. Martin (Dec. 9, 1993), Cuyahoga App. No. 64421; State v.Hopings, Lucas App. No. I-05-1145, 2007-Ohio- *Page 14 
450; State v. Walton (August 2, 1995), Lorain App. No. 94 CA005940; andState v. Frazier (Dec. 22, 1989), Lucas App. No. L-89-017.
 {¶ 43} The trial court determined that the instruction was inappropriate, since the murder occurred in the common area of the duplex.
 {¶ 44} Defendant maintains that the case law does not clarify whether the stairwell of an up-and-down duplex is considered a "common area" and therefore the same should be considered to be part of defendant's home. However, the above-cited law establishes that there is a duty to retreat from common areas of multi-unit residential dwellings. The record establishes that the victim was a guest of the tenants who lived in the downstairs unit. He was welcome to enter and leave their premises on the day in question. Although they suggested he not go inside when he did, his permission to enter the dwelling was never revoked. The evidence also establishes that there was access to both units from the front door where the victim entered. The area where the victim stood was filled with items belonging to children that lived in the upstairs and downstairs units. The victim did not go up the stairs and was shot on the landing inside the front door. Based on the record, the trial court did not err when instructing the jury as to the duty to retreat in connection with the elements of self-defense.
 {¶ 45} Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed. *Page 15 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] The court later indicated the other specifications "did not exist in this particular case." The State does not challenge this finding.
[2] We recently addressed this argument in State v. Evans, Cuyahoga App. No. 85583, 2005-Ohio-4584, ¶ 17. *Page 1