[Cite as *Bienyk v. Ogbonna*, 2015-Ohio-4625.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Joann B. Bienyk, Trustee | Court of Appeals No. L-15-1051 |
| Appellant | Trial Court No. CVG-14-03468 |
| v. | |
| Ulo N. Ogbonna | **DECISION AND JUDGMENT** |
| Appellee | Decided: November 6, 2015 |

* * * * *

Margaret M. Weisenburger, for appellant.

Thomas S. Douglas, for appellee.

* * * * *

**JENSEN, J.**

{¶ 1} Plaintiff-appellant, Joann B. Bienyk, Trustee, appeals the January 30, 2015

judgment of the Toledo Municipal Court in favor of defendant-appellee, Ulo N.

Ogbonna. For the reasons that follow, we find her first assignment of error not well-

taken, and her second assignment of error well-taken, in part, and not well-taken, in part. We conclude that judgment in favor of Ogbonna should have been offset by an additional $8,250, thus we enter judgment in her favor in the amount of $45,144.87.

## I. BACKGROUND

### A. The Contracts, Delays in Vacating the Property, and Delinquent Tax Bills

{¶ 2} Bienyk was the owner of 714 and 724 S. Byrne Avenue in Toledo, Ohio. There are two structures located at 714 S. Byrne, referred to as "South 714" and "North 714." North 714 is a pole barn. At 724 S. Byrne, there are also two structures, referred to as "Rear/South 724" and "Front/North 724." Rear/South 724 is a two-story building with a residence on the top floor and offices on the first floor. Front/North 724 is a workshop area.

{¶ 3} Bienyk entered into a purchase agreement on January 29, 2012, whereby she agreed to sell the properties to Ogbonna. Ogbonna, a business owner, intended to use Front/North 724 as a shop area, Rear/South 724 as a residence, North 714/pole barn as a warehouse, and South 714 as storage. The total purchase price as set forth in the agreement was $450,000. Ogbonna was to make a down payment of $60,000. The agreement provided that $20,000 of that amount would be paid to Bienyk on April 1, 2012, so that she could secure a new residence. The remaining $40,000 was to be paid at closing, which was scheduled for May 1, 2012. The agreement provided that Ogbonna would take possession on June 1, 2012, and she would begin making monthly payments

2.

of $3,141.81 beginning July 1, 2012. Bienyk was to pay real estate taxes owed up to the time of closing. These terms were to be reflected in a land contract.

{¶ 4} Bienyk was not prepared to leave the premises by the originally agreed-upon date, so on May 25, 2012, the parties entered into a purchase agreement change addendum postponing the possession dates and extending the closing date to August 1, 2012. The August 1, 2012 closing date was postponed again, however, when it was discovered that Bienyk owed delinquent property taxes. Bienyk entered into a delinquent payment plan with the county auditor's office on August 30, 2012. Bienyk and Ogbonna closed on the properties on August 31, 2012. They executed a land installment contract on that date.

{¶ 5} Under the terms of the August 31, 2012 contract, Ogbonna was to take possession of the property in pieces. Section 2 of the contract provided:

> Buyer shall have possession of the rear building of 724 S. Byrne Road, at closing, the Front Building of 724 S. Byrne Road, on October 1, 2012, if said front building is not available, vacant, all debris, belongings removed, and in a broom swept clean condition, on October 1, 2012, Seller to pay rent of $1500.00 per month; Rear Buildings of 714 S. Byrne Road, December 1, 2012, and if said rear building of 714 S. Byrne Road is not available, vacant, all debris, belongings removed, and in a broom swept clean condition, by December 1, 2012, then Seller to pay rent of $1,000.00 per month; and until the condition or conditions of this contract are broken.

3.

{¶ 6} Bienyk did not relinquish possession in accordance with the terms of the contract. Although Ogbonna obtained possession of South 714 at closing, she did not obtain possession of 724 and the pole barn as scheduled. She ultimately received the keys to North 724 in March of 2013, after paying $7,000 to Bienyk, however, Bienyk prohibited Ogbonna's contractor from accessing the property, and in April of 2013, Ogbonna entered the building to find Bienyk's son's boat there.

{¶ 7} The parties engaged in discussions and mediation, and a first amendment to the land contract was negotiated and executed by Ogbonna in August of 2013. Bienyk refused to sign the agreement. Contention between the parties continued, but they ultimately executed a first amendment to the land installment contract on October 21, 2013.

{¶ 8} Under the terms of the amendment, the parties released any claims they may have had against each other under the original land contract. Bienyk acknowledged receipt of the following payments from Ogbonna: (1) $60,000 toward the $450,000 purchase price, leaving an outstanding principal balance of $390,000; (2) $10,284.80— $1,800 for shelving units; $850 for the water bill; $331.99 for telephone repair; $1,350 for late charges; and $4,027.06 to be applied toward principal; and (3) $1,855.29 for principal and current real estate taxes, and an additional $1,855.29 for October of 2013. The amendment obligated Ogbonna to begin monthly payments of $3,141.81 on October 1, 2013, but provided that while Bienyk continued to occupy the pole barn, payments were reduced to $2,181.81 per month. Bienyk was to have "up to and including" October

4.

31, 2013, to vacate the residence, and "up to and including" December 31, 2013, to vacate the pole barn. With respect to taxes and utilities, the amendment obligated Bienyk to pay delinquent taxes totaling $27,448.97. It obligated Ogbonna to pay amounts due for the first and second halves of 2012, but she was to receive credit for $9,357.19. For September 2013 through December 2013, and for January 2014 through June 2014, Ogbonna was required to pay taxes of $1,213.48 per month. Bienyk was obligated to pay utilities for the pole barn for August of 2013, continuing until she vacated the pole barn, but no later than December 31, 2013.

{¶ 9} Bienyk vacated the residence on October 31, 2013. She never completely vacated the pole barn. In December of 2013, a pipe broke in Rear/South 724, causing damage to the premises.

### B. Bienyk Files Suit and Ogbonna Counterclaims

{¶ 10} On March 14, 2014, Bienyk filed the present action against Ogbonna. She claimed (1) that Ogbonna defaulted under the terms of the land installment contract and its first amendment by failing to make payments due on January 1, 2014, of $2,141.81, plus late charges, and (2) that under the terms of the land contract, Ogbonna owed the principal sum of $390,000, with interest of 7.5 % from December 1, 2012, together with taxes and insurance, and for damage to the property, to be determined by the court. Bienyk demanded process and restitution of the premises, cancellation of the land installment contract, and judgment in her favor for the amount of taxes due, damages to the property, and interest and costs.

5.

**{¶ 11}** Ogbonna filed an answer and counterclaim on March 28, 2014. She claimed that Bienyk breached the contract and its amendment by not vacating the premises, continuing to reside in and retain possession of certain portions of the property, and impeding and preventing Ogbonna's quiet use and enjoyment of the property. She claimed to have sustained losses including lost revenue, loss of goodwill to her business, diminution in the value of her business, lost profits, and other related costs and expenses. She also asserted claims of breach of the duty of good faith and unjust enrichment. She sought specific performance of the contract and its first amendment, compensatory and punitive damages, including attorney fees, exceeding $25,000, and preliminary and permanent injunctive relief.

**{¶ 12}** The parties tried the case to the court on October 6, 2014. At trial, the parties submitted evidence pertinent to the contracts and the various amendments that were executed, the payments that were made, the vacation of the properties at issue, and the status of the property taxes. Bienyk's counsel told the court that the issue before it at trial was with respect to unpaid taxes and some payments that Ogbonna failed to make. Ogbonna's counsel told the court that it was her position that she overpaid and was owed money from those overpayments. Counsel also informed the court that she was requesting damages for lost business, improvements made to the property, and reimbursement for business insurance.

**{¶ 13}** As to damage to the property caused by the broken pipe, counsel told the court that they disagreed about the cost of repairs to the plumbing and ceiling tiles, and

6.

that there was a water bill at issue. It was agreed that once the damages were quantified, the parties would share in the payment of those damages, but that evidence relative to the repair costs would be submitted to the court when available.

{¶ 14} After the parties presented evidence at trial, the court instructed them to submit closing arguments via post-trial briefs. Bienyk argued in her brief that Ogbonna owed her $28,761.80—$8,567.24 for installment payments, and $20,194.56 for taxes. The taxes included amounts owed as of December 31, 2013 ($8,939.01); taxes due for January, February, March, and April of 2014, figured at a rate of $7,642.34 per half ($5,094.92); penalties and interest of $725.90 owed due to failure to make payments on the delinquency payment plan, as well as add-backs charged per the treasurer ($5,434.73). She also claimed that she was entitled to recover for the damages caused by the broken water pipes, however, she indicated that the amount of such damages were not yet available and would be submitted when available.

{¶ 15} Ogbonna argued in her post-trial brief that she overpaid under the land contract by $46,854.82. She claimed that this overpayment increases to $58,049.87 when payments are based on actual possession, and to $79,853.64 when based on storage which, she claimed, is all she ever had. She also argued that Bienyk owed her $83,395.28 for lost gross profits for 2013 based on her failure to vacate the premises. Thus, Ogbonna claimed, Bienyk actually owed Ogbonna either $163,248.92, $141,445.15, or $130,250.10, depending on whether damages were calculated based on storage, actual possession, or at the very least, the terms of the contract. As for the

7.

amounts Bienyk claimed were due to her, Ogbonna argued that she had already accounted for these amounts in the damages she was requesting from Bienyk. She also challenged Bienyk's claims for penalties and add-backs owed the treasurer, arguing that no testimony was offered as to how these add-backs were calculated. She also posited that some of the penalties, interest, and add-backs may have been imposed on account of Bienyk's prior delinquency.

{¶ 16} In their respective replies to each other's post-trial briefs, the parties argued about whether the amounts owed by Bienyk for failing to vacate the premises were "penalties" or whether they were "rent" payments. Ogbonna denied that the parties ever contemplated that Bienyk would be a tenant of Ogbonna's and that the amounts owed were penalties for breach of the contract. Bienyk characterized those provisions as establishing a rental arrangement and argued that there was no breach of the agreement because Ogbonna never served Bienyk with a 30-day notice to vacate.

{¶ 17} The trial court issued its decision in a written judgment journalized on January 30, 2015. It articulated two basic questions to be determined: (1) did plaintiff's failure to vacate the premises as agreed by the parties violate the land contract? and (2) did defendant violate the land contract by not making timely payments. The court answered both questions in the affirmative.

{¶ 18} First, the court found that the relationship resulting from Bienyk's failure to vacate was not one of a landlord-tenant relationship. It held that Ogbonna was never

8.

given full possession of the property and was, therefore, entitled to return of her $60,000 down payment. It also held that Bienyk owed a penalty of $1,500 per month to Ogbonna for failing to vacate the residence by October 31, 2013.

{¶ 19} The trial court found that Ogbonna also breached the agreement by failing to make all required payments of principal and taxes. It calculated the payments made by Ogbonna and ultimately concluded that those payments were deficient by $6,605.13.

{¶ 20} Due to the parties' breaches, the court declared the land installment contract terminated and unenforceable. It awarded judgment to Ogbonna in the amount of her down payment of $60,000, less her deficient payments of $6,605.13, for a total of $53,394.87. It denied all other requests for damages.

{¶ 21} Bienyk appealed the trial court judgment and Ogbonna cross-appealed. Ogbonna ultimately dismissed her cross-appeal, however, leaving us to consider only Bienyk's assignments of error:

FIRST ASSIGNMENT OF ERROR

The Lower Court erred in finding that Bienyk did not vacate the units pursuant to the Amended Contract.

SECOND ASSIGNMENT OF ERROR

The Lower Court erred by failing to allow the parties to present the additional damages as stipulated by the parties in the opening statement and further in the calculation of the payments due from the [sic] Ogbonna.

9.

## II. LAW AND ANALYSIS

### A. First Assignment of Error

{¶ 22} In her first assignment of error, Bienyk claims that the trial court's judgment is against the manifest weight of the evidence because it incorrectly concluded that she failed to vacate the residence by October 31, 2013. She claims, therefore, that the trial court incorrectly determined that she breached the contract. Ogbonna does not dispute that the trial court mistakenly concluded that Bienyk failed to vacate the residence by October 31, 2013. She argues, however, that because Bienyk never vacated the pole barn, as required by the agreement, Bienyk did, in fact, breach the possession term of the agreement and the trial court's error was harmless.

{¶ 23} In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. (Citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact," and where the evidence is susceptible of more than one construction, the appeals court must interpret it in a manner which is "consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id* at ¶ 21.

10.

**{¶ 24}** The parties both agree that the trial court erred in concluding that Bienyk failed to vacate the residence by October 31, 2013. However, despite the error, we must consider Ogbonna's argument that the judgment was nevertheless correct given Bienyk's failure to vacate the pole barn. As we recognized in *Reynolds v. Budzik*, 134 Ohio App.3d 844, 846, 732 N.E.2d 485 (6th Dist.1999), fn 3:

> It has long been the law in Ohio that "where the judgment is correct, a reviewing court is not authorized to reverse such judgment merely because erroneous reasons were assigned as the basis thereof." Thus, when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial. (Internal citations omitted.)

**{¶ 25}** Here, the amendment to the land contract provided not only that Bienyk would vacate the residence by October 31, 2013, but also that she would vacate the pole barn by December 31, 2013. The evidence at trial established that Bienyk, in fact, never completely vacated the pole barn. Thus, while we agree with Bienyk that the trial court erred in finding a breach of the contract based on her failure to vacate the residence, we agree with Ogbonna that such error was harmless given that the pole barn was never vacated as agreed.

**{¶ 26}** As such, we find Bienyk's first assignment of error not well-taken.

11.

## B. Second Assignment of Error

{¶ 27} In her second assignment of error, Bienyk claims that the trial court erred in (1) refusing to consider evidence of the damages from the broken water pipe, and (2) in its calculation of damages. Ogbonna responds that almost four months passed between the time of trial and the date of the trial court's decision, yet there still existed no evidence to present to the trial court as to damages from the water pipe. She claims that the evidence did not exist because Bienyk refused to do part of the inspections necessary to determine damages.

{¶ 28} The parties did stipulate at trial that they would submit evidence of damages once they were able to quantify those damages. However, it was not reasonable for the parties to allow this issue to linger indefinitely. As Ogbonna points out, almost four months passed between trial and the date of the court's decision, and there is no evidence in the record to suggest that submission of damages was imminent. We find no error in the trial court's refusal to postpone judgment any longer.

{¶ 29} As to the calculation of damages, it appears that the trial court determined damages by starting with the amount of the installment payments as set forth in the amendment ($3,141.81); subtracting out $2,500 for Bienyk's "rental" of the residence and pole barn, thus bringing the monthly amount owed by Ogbonna to $641.81; multiplying this number by 7.5 (as payment for September 2013 through April 15, 2014), for a total of $4,813.58; plus taxes figured at a rate of $1,213.48 for 7.5 months, for a total of $9,101.10. The installment payments and taxes together total $13,914.68.

12.

{¶ 30} The court then subtracted out payments of $4,027.06, $1,855.29, $1,855.29, $3,355.29, and $2,141.28, resulting in a deficiency of $680.27 owed by Ogbonna. The court also added in taxes owed for 2012—$5,924.86—bringing the total deficiency owed by Ogbonna to $6,605.13. However, the trial court awarded $60,000 to Ogbonna—the return of her down payment. Subtracting the deficiency owed by Ogbonna from this $60,000 netted a total amount owed to Ogbonna of $53,394.87.

{¶ 31} Neither party is satisfied that the trial court's calculations were correct, but Ogbonna has declined to challenge those calculations on appeal. Bienyk, on the other hand, claims that for January 1, 2014, through March 31, 2014, installment payments should have been $2,141,81 per month (and half that for April 2014), thus the amount due for that period was actually $7,496.33. The calculations by the court for January 1 through April 15, 2014, would have totaled $2,246.34 because they were calculated assuming that Ogbonna's payments were offset by $2,500 per month. The parties both agree that the trial court erred in determining that Bienyk failed to vacate the residence by October 31, 2013, thus it was error to offset Ogbonna's payments for the amounts attributable to the "rental" of the residence.

{¶ 32} As for taxes, Bienyk claims that Ogbonna owes taxes for January through April of 2014, at $1,273.73 per month, for a total of $5,094.92 for 2014. The court calculated the rate at $1,213.48 per month (a $60.25 difference) for 3.5 months instead of four months. The amendment to the land installment contract provides that taxes were

13.

$1,213.48 per month beginning in September 2013. Bienyk has failed to adequately explain why the amount of $1,273.73 per month should have been used to calculate taxes.

{¶ 33} Bienyk also claims to be owed for 2013 taxes in the amount of $8,939.01. Although the trial court addressed taxes owed beginning in September of 2013, it did not address Bienyk's claim that she was owed for taxes for January 1 through August 31, 2013. This is likely because the amendment to the land installment contract does not appear to make any provision for the payment of taxes for this period. Thus, it was not error for the trial court to fail to address it.

{¶ 34} In sum, we find Bienyk's first assignment of error not well-taken, but we find her second assignment of error well-taken, in part, and not well-taken, in part. We agree with Ogbonna that Bienyk breached their agreement by failing to vacate the pole barn by December 31, 2013, thus the trial court committed harmless error when it found that Bienyk breached the agreement because she failed to vacate the residence by October 31, 2013. We do find error, however, in the trial court's calculation of the amount owed to Ogbonna because the trial court subtracted $2,500 per month from the installment payments for November 1, 2013, through April 15, 2014, when it should have subtracted only $1,000 per month. The trial court should have offset the return of Ogbonna's down payment by an additional $1,500 per month ($8,250).

## III. CONCLUSION

{¶ 35} As to Bienyk's appeal of the January 30, 2015 judgment of the Toledo Municipal Court, we find her first assignment of error not well-taken, and her second

assignment of error well-taken, in part, and not well-taken, in part. Given our conclusion that judgment in favor of Ogbonna should have been offset by an additional $8,250, we hereby enter judgment in her favor in the amount of $45,144.87. The costs of this appeal are assessed to Ogbonna pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.           _____
                                                           JUDGE

Arlene Singer, J.                

                                                           _____
James D. Jensen, J.                                                 JUDGE
CONCUR.

                                                           _____
                                                   JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.