[Cite as *State v. Cunningham*, 2023-Ohio-157.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

Appellee

v.

LARON CUNNINGHAM

Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 29122

Trial Court Case No. 2018-CR-4739

(Criminal Appeal from Common Pleas
Court)

. . . . . . . . . . .

O P I N I O N

Rendered on January 20, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

J. DAVID TURNER, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Laron Cunningham appeals from his convictions on charges of murder and

aggravated robbery with repeat-violent-offender specifications.[1]

{¶ 2} Cunningham contends the trial court erred in failing to instruct his jury that the State bore the burden to disprove his self-defense claim. In light of the Ohio Supreme Court's recent decision in *State v. Brooks*, Ohio Slip Opinion No. 2022-Ohio-2478, __ N.E.3d __, we agree that the trial court erred in instructing that self-defense was an affirmative defense on which Cunningham bore the burden of proof. Nevertheless, we also conclude that the trial court's error in allocating the burden of proof was harmless beyond a reasonable doubt. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 3} A grand jury indicted Cunningham on the above-referenced charges and others in connection with the stabbing death of 60-year-old Michael Oliver. The incident occurred inside Oliver's apartment, where the two men had been smoking crack on December 8, 2018.

{¶ 4} Police encountered Cunningham in the lobby of another apartment building early the next morning. He reported that he had been smoking crack with a friend and was experiencing chest pains. At that time, police were unaware of the stabbing incident.

{¶ 5} As a result of his physical complaint, Cunningham was taken to an area hospital where he was treated and released. But rather than leaving the hospital, Cunningham reported fearing that he would harm someone if he left. Following that remark, he checked himself back into the hospital and met with a psychiatric evaluator.

---

[1] A jury also found Cunningham guilty of several other offenses that merged into those set forth above as allied offenses of similar import. The present appeal concerns only his murder conviction.

Cunningham told the evaluator that he had killed someone and that the victim was in apartment 1003 at the Wilkinson Plaza. Cunningham reported that a voice told him to do it, that he saw demon faces, and that he was paranoid.

{¶ 6} Officers responded to the Wilkinson Plaza apartment and found Oliver face down on the floor with a fatal knife wound to his neck. The knife was located nearby in a trash can. Video from surveillance cameras in the apartment building showed Cunningham entering and exiting Oliver's apartment multiple times, riding an elevator carrying a television, and selling a cellphone to someone.

{¶ 7} When police discovered Oliver's body, a television was missing from his apartment. Investigators spoke to a resident of another unit who reported taking an old television from Cunningham in exchange for cash, drugs, or both. Investigators also discovered that the cellphone Cunningham was seen selling had belonged to Oliver.

{¶ 8} Cunningham testified in his own defense at trial. He claimed that he had sold the television and cellphone at Oliver's direction to raise money to purchase crack cocaine. As for the stabbing, Cunningham explained that Oliver had gotten angry in the apartment and had attacked him with the knife. Cunningham testified that he had wrestled the knife away from Oliver. He then stabbed Oliver in the neck because he feared for his own life.

{¶ 9} Following the presentation of evidence, the trial court instructed the jury on self-defense. The trial court instructed that self-defense was an affirmative defense on which Cunningham bore the burden of proof. The jury ultimately found him guilty on numerous charges, including murder and aggravated robbery. The trial court separately

found him guilty of repeat-violent-offender specifications. Following merger of allied offenses, Cunningham received an aggregate prison term of 34 years to life.

## II. Analysis

{¶ 10} On appeal, Cunningham contends the trial court erred in allocating the burden of proof on his self-defense claim. Effective March 28, 2019, the General Assembly amended R.C. 2901.05, making self-defense no longer an affirmative defense. The amendment shifted the burden "from the defendant to the state to prove beyond a reasonable doubt that the accused did not use force in self-defense." *Brooks*, Ohio Slip Opinion No. 2022-Ohio-2478, __ N.E.3d __, ¶ 6.

{¶ 11} In the present case, the charged offenses occurred in December 2018, prior to the effective date of the amendment. Cunningham's trial occurred in April 2021, after the effective date. At the time of trial, the law in this appellate district was that the burden-allocating change in R.C. 2901.05 did not apply to a defendant like Cunningham whose offenses pre-dated March 28, 2019. In *Brooks*, however, the Ohio Supreme Court more recently held that the burden-allocating change in the self-defense statute applies to all trials occurring on or after March 28, 2019, even if the offenses occurred prior to that date. *Brooks* at ¶ 23.

{¶ 12} In light of *Brooks*, the State concedes the trial court erred in instructing the jury that self-defense was an affirmative defense on which Cunningham bore the burden of proof. The State argues, however, that this error was harmless beyond a reasonable doubt because Cunningham was not entitled to a self-defense instruction at all. In *Brooks*, the Ohio Supreme Court itself recognized that a trial court's erroneous allocation of the

burden of proof on self-defense may be harmless where, on the evidence presented, "a defendant was not entitled to a self-defense claim." *Id.* at ¶ 23. The narrow issue before us, then, is whether Cunningham was entitled to a jury instruction on self-defense.

**{¶ 13}** "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. When considering a self-defense instruction, the trial court must determine whether the evidence presented, if believed, reasonably would support a self-defense claim. *State v. Wilson*, 2d Dist. Clark No. 2021-CA-68, 2022-Ohio-3763, ¶ 40. To be justified, a jury instruction must be based on an actual issue in the case as demonstrated by the evidence. *Id.*

**{¶ 14}** A claim of self-defense involving deadly force requires, among other things, the existence of evidence that "the defendant had a bona fide belief that he or she was in danger of death or great bodily harm[.]" *State v. Barker*, 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶ 22. A self-defense claim also "requires evidence that the defendant had both an objectively reasonable belief and a subjective belief that force was necessary to protect himself or herself." *Id.* at ¶ 27. In addition, a self-defense claim requires consideration of the force used relative to the danger. "If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable." *Id.* Finally, under the law applicable to Cunningham, he could not kill in self-defense if he had a

reasonable means of retreat from the confrontation.[2] *Id.* at ¶ 23.

{¶ 15} With the foregoing requirements in mind, we conclude that Cunningham was not entitled to raise a self-defense claim and was not entitled to a self-defense instruction. His own testimony established that when he stabbed Oliver, he lacked an objectively reasonable belief that deadly force was necessary to protect himself from death or great bodily harm. The force he used also was grossly disproportionate to the danger Cunningham faced, and a reasonable means of escape existed to avoid using deadly force.

{¶ 16} The record reflects that Cunningham was approximately 20 years younger and 70 to100 pounds heavier than 60-year-old Oliver. Cunningham testified that he and Oliver had been smoking crack in Oliver's apartment prior to the stabbing. At some point, Oliver asked Cunningham to go sell his television and cell phone and to buy more crack. Cunningham testified that he complied with Oliver's request and returned to the apartment with a small amount of cash and crack. Upon Cunningham's return, Oliver became angry and complained about the quantity of crack. Cunningham refused to give him more and attempted to leave. As Cunningham reached the apartment door, Oliver ran toward him brandishing a knife. Cunningham deflected the attack and punched Oliver in the face two or three times, causing him to fall on the ground. Cunningham then jumped on top of Oliver, punched him in the face at least two more times, choked him, and took away the

---

[2] In April 2021, S.B. 175 took effect, amending R.C. 2901.09 and substantially modifying the duty to retreat in cases involving a self-defense claim. The amendment has no applicability in Cunningham's case. It does not apply retroactively to offenses committed before its effective date. *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 23.

knife. According to Cunningham, Oliver continued "flailing" and trying to get up. He also tried to fight by swinging at Cunningham. In response, Cunningham "just went up with the knife and just came down, and it hit him in his neck." Cunningham insisted that he stabbed Oliver because he feared for his own life. Cunningham explained his emotions as follows: "I just kind of felt some type of energy, and I just kind of like screamed and raised the knife and came down with it."

{¶ 17} In its closing argument, the State opposed the self-defense claim, arguing:

You know, even if you believe that [Oliver] came at [Cunningham] with a knife, and even if you believe the nonsense that I'm trying to get away, and I'm punching him, although that doesn't fit with kind of the injuries on Oliver, but even if you believe all of that, the moment the guy who's 20 years younger and 100 pounds heavier and can overpower him and has overpowered him, the moment he now has a deadly weapon, and Michael Oliver has none, self-defense would go out the window. You have the deadly weapon. You're younger. You're stronger. You're heavier, and you've got the murder weapon.

Your ability to defend yourself ends when the deadly threat stops, and when Michael Oliver is on the ground underneath him, older, lighter. The deadly threat is gone. The deadly threat is in his hands, even if you believe his nonsense.

{¶ 18} For essentially the same reasons articulated by the State in its closing argument, we conclude that Cunningham was not entitled to a jury instruction on self-

defense as a matter of law. Regardless of any subjective belief he may have had about being in danger and fearing for his life, such a belief objectively was unreasonable. At the time of the stabbing, Cunningham had punched 60-year-old Oliver in the face at least four times. He also had disarmed and gained physical control over Oliver, who he outweighed by up to 100 pounds. Even if Oliver had continued flailing and swinging, the act of stabbing the victim in the neck was grossly disproportionate to any continued risk of harm that Cunningham faced. Having disarmed and effectively subdued Oliver, Cunningham also could have left the apartment rather than inflicting the fatal wound.

{¶ 19} For the foregoing reasons, we have no difficulty concluding that Cunningham was not entitled to a jury instruction on self-defense. That being so, the trial court's error in making self-defense an affirmative defense and placing the burden of proof on Cunningham was harmless beyond a reasonable doubt.

### III. Conclusion

{¶ 20} Cunningham's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.