[Cite as *State v. Lane*, 2023-Ohio-1305.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                             Court of Appeals No. E-22-035

      Appellant                                        Trial Court No.  2021 CR 0447

v.

Anthony Lane                                         **DECISION AND JUDGMENT**

      Appellee                                           Decided:  April 21, 2023

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1}  Following a jury trial, defendant-appellant, Anthony Lane, appeals the
August 18, 2022 judgment of the Erie County Court of Common Pleas, convicting him of
felonious assault, a violation of R.C. 2903.11(A)(1) and (D)(1)(a), a second-degree
felony, and sentencing him to a minimum term of three years in prison and a maximum
term of four-and-a-half years.  For the following reasons, we affirm.

## I. Background

{¶ 2} Anthony Lane was charged with attempted murder and felonious assault after beating and seriously injuring a man in the hallway of the apartment complex where they both lived. The state dismissed the attempted murder charge, but the matter proceeded to a jury trial on the felonious assault charge. The following evidence was presented at trial.

{¶ 3} D.J., T.H., and Lane were all residents of Bay Shore Towers apartments in Erie County, Ohio. D.J. lived on the eighth floor; his girlfriend, T.H., lived on the third floor; and Lane lived on the tenth floor. Lane and T.H. were acquainted through their church and T.H. sometimes helped Lane by driving him to run errands. On February 27, 2022, Lane cooked breakfast for T.H. and brought it to her apartment to thank her for driving him. D.J. did not appreciate Lane bringing his girlfriend breakfast, and he went to Lane's apartment—drunk—to tell him so. Their encounter was recorded by surveillance video, but does not contain audio.

{¶ 4} As depicted in the surveillance video, which was admitted into evidence at trial, D.J. knocked on Lane's door. Lane answered the door and extended his hand to try to shake D.J.'s hand, but D.J. slapped it away. They talked for about a minute, and judging from their body language, the conversation became increasingly heated. D.J. pushed Lane, then Lane punched D.J. They both smacked at each other, then Lane wrestled D.J. to the ground. It appears that Lane tried to choke D.J., then punched him 11 times in the face or head. D.J. stopped moving, but Lane stomped on his stomach,

2.

kicked him, and punched him in the head.  Lane walked away, then came back and kicked D.J. in the head three more times.

{¶ 5}  Lane went into his apartment and returned with his phone.  A neighbor came out and Lane spoke with him.  Lane is seen talking on the phone—he had called 9-1-1.  At that point, he was being recorded by video surveillance and by 9-1-1.  On the video, D.J. can be seen moving his head and leg and unsuccessfully trying to lift his head.  In the 9-1-1 audio recording, Lane told the dispatcher that D.J. was trying to move and he can be heard commanding D.J. to stay down.  At the same time, the video surveillance captured Lane stomping and kicking D.J.'s head seven more times.  The beating stopped when the police arrived.  EMS arrived shortly thereafter and took D.J. away on a gurney.

{¶ 6}  D.J. was treated at the Firelands Hospital emergency department.  He suffered a zygomatic arch (cheekbone) fracture, fracture of his nasal bone and septum, a rib fracture, "extensive posttraumatic maxillofacial soft tissue swelling," and injury to his kidney.  He tested positive for alcohol, marijuana, and cocaine.  D.J. was advised to follow up with a plastic surgeon; the surgeon recommended no further treatment unless D.J. developed difficulty breathing.

{¶ 7}  Lane testified at trial.  He admitted that he caused D.J. serious physical harm, he was responsible for D.J.'s injuries, and he knew what he was doing when he repeatedly punched and kicked D.J. in the head, body, and face.  Lane conceded that he stomped on D.J. and kicked him in the face after he was incapacitated and even walked into his apartment, came back out, and kicked D.J. again—all while D.J. remained

3.

incapacitated. He agreed with the state that a person does not deserve to have their jaw, nose, and rib fractured and their kidney injured just for pushing someone, and he was aware that there were surveillance cameras that would record the interaction. Nevertheless, Lane sought to show that he acted in self-defense.

{¶ 8} Lane said that D.J. warned him a year ago not to talk to T.H. and Lane "talked him down" at that time, but he did not believe that he could talk him down again this time. He described that D.J. at first had his hands in his pockets; he claimed that he saw something pointy, insinuating that he believed D.J. might have a weapon. He said he was "nervous" and "kind of scared," and did not really want to fight D.J., but he believed that D.J. would come back and shoot him. Although officers testified that they saw no injuries on Lane and Lane complained of no injuries, Lane insisted that D.J. placed his hand around his neck and scratched his neck. He maintained that he continued to kick D.J. while he was down "[b]ecause he was coming to" and he didn't want D.J. to try to hurt him. He described, "I'm trying to knock him back out again, no matter what I had to do."

{¶ 9} Lane requested that the court instruct the jury on self-defense and on the inferior offense of aggravated assault, but the court refused. The jury convicted Lane of felonious assault, and the trial court sentenced him to a minimum term of three years in prison and a maximum term of four-and-a-half years. The conviction and sentence were memorialized in a judgment journalized on August 18, 2022.

4.

{¶ 10} Lane appealed. He assigns the following errors for our review:

ASSIGNMENT OF ERROR NO. I: A TRIAL COURT ERRS AND ABUSES ITS DISCRETION AND PREJUDICES THE DEFENDANT WHEN IT DENIES HIS MOTIONS FOR A JURY INSTRUCTION ON SELF-DEFENSE AND THE INFERIOR OFFENSE OF AGGREVATED [sic] ASSAULT[.]

ASSIGNMENT OF ERROR NO. II: THE TRIAL COURT'S SENTENCING IS CONTRARY TO LAW[.]

## II. Law and Analysis

{¶ 11} In his first assignment of error, Lane challenges the trial court's denial of his request for jury instructions on self-defense and aggravated assault. In his second assignment of error, he challenges his sentence. We consider each of these assignments in turn.

## A. Jury Instructions

{¶ 12} In his first assignment of error, Lane claims error in the trial court's refusal to provide jury instructions on self-defense and the inferior offense of aggravated assault.

{¶ 13} Trial courts are charged with giving juries correct and comprehensive instructions that adequately reflect the argued issues in the given case before them. *State v. Sneed,* 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). "Requested jury instructions should ordinarily be given if they are correct statements of law that are applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the

5.

instruction." *Miller v. Defiance Regional Med. Ctr.,* 6th Dist. Lucas No. L-06-1111, 2007-Ohio-7101, ¶ 40, citing *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). We review the trial court's refusal to provide a requested jury instruction for an abuse of discretion. *State v. Heiney,* 2018-Ohio-3408, 117 N.E.3d 1034, ¶ 133 (6th Dist.).

### 1. Self-Defense

{¶ 14} Under R.C. 2901.05(B)(1), "[a] person is allowed to act in self-defense * * *." The elements of self-defense differ depending upon whether the defendant used deadly or non-deadly force. *State v. Baker,* 6th Dist. Lucas No. L-21-1258, 2023-Ohio-241, ¶ 27, quoting *In re N.K.,* 2021-Ohio-3858, 180 N.E.3d 78, ¶ 12 (6th Dist.). "Deadly force" is "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). This court has recognized that "the act of delivering multiple punches, in succession, to another's head may rise to the level of deadly force." (Citations omitted.) *In re N.K.* at ¶ 12.

{¶ 15} A person may use deadly force in self-defense where he (1) was not at fault in creating the situation giving rise to the affray; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) did not violate any duty to retreat or avoid the danger. *State v. Messenger,* Slip Opinion No. 2022-Ohio-4562, ¶14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Under the most recent amendments to R.C. 2901.09(B), "a person has no duty to retreat before

6.

using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). "A person standing in the doorway of his home," as Lane was, "is lawfully where he or she has a right to be." *State v. Robinette*, 5th Dist. Stark No. 2021 CA 00124, 2023-Ohio-5, ¶ 58.

{¶ 16} If a person accused of an offense involving force presents evidence "that tends to support that [he or she] used the force in self-defense * * *," the state "must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." R.C. 2901.05(B)(1). The Ohio Supreme Court clarified the burden-shifting required under R.C. 2901.05. It explained: "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Messenger* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden," and the state must then disprove self-defense. *Id.* at ¶ 25.

{¶ 17} After the state indicated that it would be resting, the court told the attorneys that it did not intend to instruct the jury on self-defense. It explained:

> [W]e had lengthy discussions yesterday, off the record, about the inclusion of a self-defense instruction. The Court had to make the determination whether the defense met the burden of production.

7.

There was one element which I could not, in good conscience, say that the defense met and that was as to the issue of whether the force used was reasonable, and my logic is that, um, while there may have been some question in the minds of anyone who saw the video about the initial provocation or the initial aggressor, and, at the end, there may have been an issue. However, there were three kicks, stomps, whatever, on the victim's body at a time when he was totally unconscious and not moving, and, therefore, I feel like that was not reasonable. So this is why I'm not including that language in the jury instructions.

{¶ 18} Defense counsel told the court that he believed the trial court's ruling was premature. The court agreed that if there was further evidence, it may be necessary to revisit the issue, particularly if Lane testified. Lane did, in fact, testify. After hearing his testimony, the court remained unconvinced that Lane had presented evidence that the force used by Lane was reasonable in response to the danger posed. It refused to provide the self-defense instruction.

{¶ 19} Lane maintains that it is undisputed that he was not at fault in creating the situation that led to his use of force. He emphasizes that D.J. came to his home and assaulted him first by shoving him. He insists that he had an honest belief, even if mistaken, that he was in immediate danger of bodily harm. Lane claims that because D.J. went to his home, a self-defense instruction was mandatory because a defendant is presumed to have acted in self-defense when in his own residence. He argues that the

8.

trial court improperly resolved evidentiary conflicts and assessed the credibility of witnesses in refusing to provide the instruction.

{¶ 20} The state responds that Lane had the burden of production on all elements, thus the defense is not available if even one element is not satisfied. Starting with the first element of a self-defense claim, the state maintains that Lane was responsible for creating the situation that gave rise to the affray because even though D.J. shoved Lane first, it was Lane who instigated the confrontation by stepping aggressively in D.J.'s direction. The state highlights Lane's testimony that he decided to punch D.J. and "show [him] what [he was] capable of."

{¶ 21} As to the second element—a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force—the state insists that there was no evidence tending to show that Lane was in imminent danger such that he was entitled to repeatedly punch, kick, and choke D.J. It argues that the evidence supported the trial court's determination that Lane's use of force was excessive and disproportionate to any apparent danger, and D.J. was not in possession of any weapon or instrumentality that could be used to inflict death or great bodily harm. The state points to Lane's testimony that a person is not justified in responding to being pushed by breaking the other person's jaw, nose, and ribs.

{¶ 22} Finally, the state claims that Lane violated a duty to retreat because he was in the common area of a multi-unit structure, yet made no effort to simply retreat into his apartment. It emphasizes that Lane, in fact, walked away multiple times while D.J. lay

9.

unconscious—even going into his apartment—but returned to D.J. to kick and stomp on him.

{¶ 23} We begin by clarifying that despite the state's position that Lane violated a duty to retreat, in fact, the current version of R.C. 2901.09(B) does not impose a duty to retreat so long as the person is in a place in which he lawfully has a right to be. A person lawfully has a right to be outside the doorway of his home. *See Robinette*, 5th Dist. Stark No. 2021 CA 00124, 2023-Ohio-5, at ¶ 58. But we also clarify that despite Lane's position that the altercation happened in his home, therefore, giving rise to a presumption of self-defense under R.C. 2901.05(B)(2), a "common area" of a multi-unit residential dwelling is not considered part of a person's home. *See State v. Nance,* 8th Dist. Cuyahoga No. 89394, 2008-Ohio-445, ¶ 44 (rejecting defendant's position that "common area" of multi-unit residential dwelling was part of his home); *State v. Hopings,* 6th Dist. Lucas No. L-05-1145, 2007-Ohio-450, ¶ 38 (hallway which led to defendant's mother's apartment and to upstairs apartment was not inside defendant's home).

{¶ 24} We focus our attention on the second element of self-defense—that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm. Courts recognize that this is a combined subjective and objective test. *State v. Thomas,* 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). It requires consideration of the force that was used in relation to the danger the accused believed he was in. *State v. Barker,* 2d Dist. No. 29227, 2022-Ohio-3756, 199 N.E.3d 626, ¶ 28, *appeal not allowed,* 169 Ohio St.3d 1431, 2023-Ohio-381, 202 N.E.3d 721. A person may use only

10.

such force as is reasonably necessary to repel an attack. *Id.* In both deadly and non-deadly force cases, "[i]f the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable." (Citations omitted.) *Id.* at ¶ 27.

{¶ 25} "In deciding whether to give a self-defense instruction, the trial court must view the evidence in favor of the defendant, and the question of credibility is not to be considered." *State v. Estelle,* 2021-Ohio-2636, 176 N.E.3d 380, ¶ 19 (3d Dist.); *see also State v. Gambino*, 11th Dist. Trumbull No. 2021-T-0018, 2022-Ohio-1554, ¶ 24, *appeal not allowed*, 167 Ohio St.3d 1499, 2022-Ohio-2953, 193 N.E.3d 585, ¶ 24 ("In determining whether the self-defense instruction is appropriate the 'court must view the evidence in a light most favorable to the defendant' without consideration of credibility."). On the other hand, "[w]hen considering a self-defense instruction, the trial court must determine whether the evidence presented, if believed, *reasonably* would support a self-defense claim. (Emphasis added.) *State v. Cunningham,* 2d Dist. Montgomery No. 29122, 2023-Ohio-157, ¶ 13, citing *State v. Wilson*, 2d Dist. Clark No. 2021-CA-68, 2022-Ohio-3763, ¶ 40.

{¶ 26} Here, we agree with the trial court that the record lacks evidence that, if believed, would *reasonably* support a self-defense claim. Regardless of who was at fault for creating the physical altercation, there is no evidence that Lane had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force. As the trial court observed, "there may have been some question in the minds of anyone who saw the video about the initial

11.

provocation or the initial aggressor, and, at the end, there may have been an issue";
however, Lane kicked and stomped on D.J.'s body "at a time when he was totally
unconscious and not moving." At this point, while D.J. lay unconscious on the ground,
he posed no risk to Lane. Nevertheless, Lane testified that after D.J. was incapacitated,
he "stomped his leg" and "stomped his face." Lane conceded—and it is clearly visible in
the video—that he walked away, but then came back and "kicked [D.J] in the face again,"
while he was still incapacitated.

{¶ 27} The video evidence and Lane's testimony demonstrate that particularly
once D.J. was unconscious, it was not objectively reasonable for Lane to believe that
deadly force was necessary to protect himself from death or great bodily harm.
Moreover, the force used by Lane—stomps and kicks to D.J.'s face and body—was
grossly disproportionate to the danger he faced and more than was reasonably necessary
to repel the alleged attack. While Lane may not have had a duty to retreat, once D.J. was
rendered incapacitated and defenseless, the situation did not call for the continued
stomping and kicking of D.J.'s face and body. There is no evidence in the record that, if
believed, would *reasonably* support a self-defense claim. The trial court did not abuse its
discretion in refusing to instruct the jury on self-defense.

## II. The Inferior Offense of Aggravated Assault

{¶ 28} Defense counsel requested an instruction on aggravated assault because he
believed that there was a question of fact whether Lane acted under the influence of
sudden passion or a sudden fit of rage, brought on by serious provocation by the victim.

12.

He suggested that this was appropriate because D.J. went to Lane's apartment, pushed him first, "did some injury to [Lane], and Lane was in a state of fear."

{¶ 29} The state responds that the only evidence of provocation were the words exchanged between D.J. and Lane, D.J. pushing Lane after Lane stepped up to him, and an alleged incident a year ago during which D.J. confronted Lane about Lane's interactions with his girlfriend. It maintains that this evidence was not sufficient as a matter of law to constitute "serious provocation." It argues that past incidents and verbal threats do not constitute serious provocation where there is an opportunity to cool off, and D.J.'s mere act of pushing Lane did not constitute sufficient serious provocation entitling Lane to an aggravated assault instruction. The state emphasizes that Lane never claimed to be in a state of passion or rage at the time he beat D.J. Rather, he claimed to be in fear and fear does not provide the emotional state necessary to show "sudden passion" or a "sudden fit of rage" for purposes of aggravated assault.

{¶ 30} Under R.C. 2903.11(A)(1)—the statute under which Lane was convicted— "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." Under R.C. 2903.12(A)(1)—the aggravated assault statute—"[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm to another * * *."

13.

{¶ 31} The trial court declined to instruct the jury on aggravated assault because it "requires the use of deadly force and that is not an element of [] felonious assault." The court reiterated this after closing arguments, explaining that it would not instruct the jury on aggravated assault because "there was no evidence that anyone said the force was deadly."

{¶ 32} As we explained above, "the act of delivering multiple punches, in succession, to another's head may rise to the level of deadly force." (Citations omitted.) *In re N.K.,* 2021-Ohio-3858, 180 N.E.3d 78, at ¶ 12. We, therefore, disagree with the trial court that there was an absence of deadly force. However, an appellate court must affirm a judgment if it achieves the right result, albeit for the wrong reason. *Bienyk v. Ogbonna,* 6th Dist. Lucas No. L-15-1051, 2015-Ohio-4625, ¶ 24. And here, we agree with the state that Lane was not under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation by the victim.

{¶ 33} Aggravated assault is an offense of an inferior degree of felonious assault. *State v. Mack,* 82 Ohio St.3d 198, 200, 694 N.E.2d 1328 (1998). "'[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury.'" *Id.,* quoting *State v. Deem,* 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph four of the syllabus.

{¶ 34} To be "serious" the provocation must be reasonably sufficient to bring on extreme stress and incite or to arouse the defendant into using deadly force. *Id.,* quoting *Deem* at paragraph five of the syllabus. There is both an objective and subjective

14.

component. Under the objective component, the provocation "must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d 630, 635, 590 N.E.2d 272 (1992) (involving voluntary manslaughter instruction, which also requires sudden passion or a sudden fit of rage brought on by serious provocation by the victim). If there is insufficient evidence of provocation, such that no reasonable jury would decide that the defendant was reasonably provoked by the victim, the court must refuse as a matter of law to give an aggravated assault instruction. *Id.* at 634. However, if the objective standard is met, "the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." *Id.*

{¶ 35} Ohio courts have examined what constitutes sufficient "serious provocation." They have found, for instance, that past incidents or verbal threats are not sufficient. *Mack* at 201. Words are not sufficient. *Id.* And a victim's simple pushing or punching the defendant is not sufficient. *State v. Bryan,* 4th Dist. Gallia No. 03CA3, 2004-Ohio-2066, ¶ 24.

{¶ 36} Ohio courts have also considered the emotional state necessary to constitute sudden passion or a sudden fit of rage. They have found that fear alone is not sufficient. *Mack* at 201. Nor is confusion. *State v. Tantarelli,* 10th Dist. Franklin No. 94APA11-1618, 1995 WL 318730, *4 (May 23, 1995). And where a defendant testifies that he was merely afraid and no evidence exists that he actually acted under a sudden fit of passion or rage, a court does not abuse its discretion by refusing to provide an instruction on

15.

aggravated assault. *See Bryan* at ¶ 26 (finding that the trial court abused its discretion by instructing the jury on aggravated assault); *State v. Jones,* 2018-Ohio-239, 104 N.E.3d 34, ¶ 19 (4th Dist.) (finding that defendant's testimony that he "was worried about [his] life" did not warrant instruction on aggravated assault).

{¶ 37} Here, there was no evidence that D.J. seriously provoked Lane. His pushing Lane did not constitute provocation under Ohio case law, nor did his previous warning to Lane not to talk to his girlfriend. And even if D.J. did provoke Lane, there was no evidence that Lane actually acted under a sudden fit of passion or rage—he testified only that he acted in fear. Accordingly, the trial court did not abuse its discretion in failing to instruct the jury on aggravated assault.

{¶ 38} We find Lane's first assignment of error not well-taken.

### B. Sentencing

{¶ 39} In his second assignment of error, Lane argues that in imposing his sentence, the trial court failed to consider the necessary sentencing factors under R.C. 2929.11 and 2929.12 and "made no mention of them at all."

{¶ 40} We review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings
>
> under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of

16.

section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 41} Lane does not complain that his sentence violated R.C. 2953.08(G)(2)(a). He argues only that his sentence is contrary to law because the trial court failed to consider the necessary sentencing factors under R.C. 2929.11 and 2929.12.  Our review of the record demonstrates that while the transcript of the sentencing hearing is silent as to R.C. 2929.11 and 2929.12, the sentencing entry specifically states that the court considered these statutes in fashioning Lane's sentence.

{¶ 42} In any event, the Ohio Supreme Court has made clear that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record."  *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20.  In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and R.C. 2929.12 is presumed even on a silent record.  *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus,* 63 Ohio St.3d 164, 166, 586 N.E.2d 94, 95 (1992).  An appellate court may not independently weigh the evidence and substitute its judgment for that of the trial court regarding the appropriate sentence under R.C. 2929.11 and 2929.12, nor may it modify or vacate a sentence under R.C. 2953.08(G)(2)(b) based on the lack of support in the record for the trial court's findings under those statutes. *Jones* at ¶ 39, 41-42.

17.

{¶ 43} Because we must presume that the trial court considered R.C. 2929.11 and 2929.12 in fashioning Lane's sentence—and the sentencing entry specifically states that the trial court considered these statutes—we find no merit to his claim that the trial court failed to consider R.C. 2929.11 and 2929.12 and that his was sentence was contrary to law.

{¶ 44} We find Lane's second assignment of error not well-taken.

### III. Conclusion

{¶ 45} The trial court did not abuse its discretion when it refused to provide jury instructions on self-defense and aggravated assault. As to the self-defense instruction, the video evidence and Lane's testimony demonstrate that it was not objectively reasonable for Lane to believe that deadly force was necessary to protect himself from death or great bodily harm. Moreover, the force used by Lane was grossly disproportionate to the danger he faced. We conclude, therefore, that the record lacks evidence that, if believed, would *reasonably* support a self-defense claim. As to the aggravated assault instruction, there is no evidence in the record that D.J. seriously provoked Lane. His pushing Lane did not constitute provocation, nor did his previous warning to Lane not to talk to his girlfriend. And even if D.J. did provoke Lane, Lane testified only that he acted in fear—there was no evidence that he acted in a sudden fit of passion or rage. We find Lane's first assignment of error not well-taken.

{¶ 46} Lane's sentence was not contrary to law. The trial court's consideration of the factors set forth in R.C. 2929.11 and R.C. 2929.12 is presumed even on a silent

18.

record. And while the court did not specifically reference R.C. 2929.11 and 2929.12 at the sentencing hearing, its sentencing entry makes clear that it considered these statutes. We find Lane's second assignment of error not well-taken.

{¶ 47} We affirm the August 18, 2022 judgment of the Erie County Court of Common Pleas. Lane is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                               _____
                                                             JUDGE
Christine E. Mayle, J.          

                                               _____
Charles E. Sulek, J.                                       JUDGE
CONCUR.

                                               _____
                                                             JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.